**UNION COUNTY.**

JANUARY TERM, 1883, No. 402.                    MAY 1, 1883.

## Dill's Appeal.

A and his wife, with B, jointly executed a mortgage which was subsequently assigned to C. The mortgagors then conveyed the premises, subject to the mortgage, to D, who agreed to pay the mortgage, but never did it. The day after this conveyance, D conveyed a portion of the mortgaged lands to B, and this portion was subsequently sold by the sheriff to E, the sheriff's return setting forth that the sale was "subject to a certain mortgage, of which public notice was given at the time of the sale." D sold the residue of the tract in parcels, one of them to F, upon which a purchase-money mortgage was given, which mortgage was assigned to C for a full cash consideration. C issued execution upon a judgment obtained upon the mortgage, covering the whole tract, and thereupon E presented a petition to the court, claiming an equity which entitled him to pay this judgment and take an assignment of it, to the end that he might collect it from the parcel conveyed to F, in relief of his own parcel. *Held*, that he had no equity upon which to ground his application.

Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. ; MERCUR, C. J., absent.

Appeal of Andrew H. Dill from a decree of the Court of Common Pleas of *Union County*, discharging a rule to show cause why the Court should not direct the manner of the sale of the real estate of Isaac Eisenhower and Mary L., his wife, and Elizabeth Ulsh.

The facts appearing upon the petition of Andrew H. Dill and the answer of Hannah V. Foster were as follows : "Isaac Eisenhower and Mary L., his wife, on March 1, 1866, owned and were possessed of one hundred and twelve acres of land, situate in West Buffalo township, Union county, and the whole was subject to the dower of Elizabeth Ulsh. On March 1, 1866, Eisenhower and his wife, and Elizabeth Ulsh, joined in the execution of a mortgage to William Cameron on the one hundred and twelve acres of land for $1,000 for money obtained for the use of Eisenhower and his wife, which mortgage was duly recorded. Judgment *pro forma* was obtained against the mortgagees March 16, 1881, for $1,902 66, and a writ of *levari facias*, No. 24, March Term, 1882, issued and was stayed by plaintiff. This judgment was assigned to Hannah V. Foster on July 3, 1882, and she issued an *alias levari facias*. This is the writ the peti-

VOL. III.—30

tioner seeks to stay, as to the land now owned by him being part of the tract originally mortgaged. On February 23, 1871, Isaac Eisenhower, his wife Mary L., and Elizabeth Ulsh, conveyed the one hundred and twelve acres to Charles H. Shriner, for the consideration of $6,000, and Shriner assumed to pay the Cameron mortgage as part of his purchase-money; but he did not pay it. On February 24, 1871, Shriner conveyed to Elizabeth Ulsh, thirty-two acres, one hundred and twenty perches of the one hundred and twelve acres for the consideration of $2,000. These thirty-two acres and one hundred and twenty perches were sold at sheriff's sale as the property of Elizabeth Ulsh to the petitioner, A. H. Dill, who received a deed for the same from the sheriff, dated December 16, 1878. The sheriff's return to the *vend. ex.* set forth that the property was sold "subject to a certain mortgage, of which public notice was given at the time of the sale of said premises." On April 18, 1871, Shriner conveyed fifty-three acres, sixty-nine perches of the one hundred and twelve acres to Mrs. Mary M. Zellers, and took a mortgage, dated April 18, 1871, from her and her husband, Henry Zellers, for $1,600, the unpaid purchase-money. This mortgage was duly recorded on June 26, 1871. Shriner assigned this mortgage to William R. Foster, who, the same day, transferred it to Hannah V. Foster, for cash in full. On this mortgage judgment was obtained December 18, 1878, for the sum of $1,897 87. This mortgage is unpaid and due. On April 4, 1874, Shriner contracted to convey eight acres, eighty perches of the one hundred and twelve acres to Jacob Boyer, and made the deed November 27, 1875. On August 17, 1875, Shriner conveyed ten acres more of the one hundred and twelve acres to Henry Zellers. On November 19, 1875, Shriner conveyed the balance of six acres to Charles Thomas.

The petition averred that the said Hannah V. Foster will direct the sale of "the said land in parcels, but not inversely, according to the dates of sale by the original vendor, but in such manner as to secure the payment of the William Cameron mortgage, without selling the land of Mary M. Zellers, upon which the mortgage to Charles H. Shriner for $1,600 is a lien, and further showing that your petitioner is ready and willing to pay all sums due on the William Cameron mortgage," and prayed "a rule on the said Hannah V. Foster to show cause why she should not make sale of the real estate herein described, for the payment of said judgment, in the proportion or

in the succession in which the properties of the several owners shall in law or equity be liable to contribute towards the discharge of the common incumbrance, to wit : the mortgage to William Cameron, otherwise, upon the payment of such judgment, to assign the same for such uses as the Court may direct."

The Court below, BUCHER, P.J., filed an opinion, saying, *inter alia :* "It is claimed that whilst it is true the entire one hundred and twelve acres are liable to pay the Cameron mortgage, and that the several tracts aliened by Shriner would be liable in the inverse order of the sales, still, as there remains unpaid nearly $2,000 of purchase-money due from Mary M. Zellers, that this should be applied to the discharge of the common debt in relief of all the other vendees. This as a general proposition is correct, if the mortgage given by Mary M. Zellers was coming to Shriner himself. But the fact is that he has transferred or assigned this mortgage to Hannah V. Foster for a moneyed consideration, so as not only to make her a *bona fide* purchaser, but a purchaser without notice of the secret and latent equities which existed between Shriner and the several purchasers of one hundred and thirteen acres. . . . . . . (Mott *v.* Clark, 9 Barr., 399 ; Appeal of the Mifflin County National Bank, 2 Out., 150.) Then Mrs. Foster, being a purchaser of a mortgage for value, was not and cannot be affected by any latent equity which the vendees of Shriner had to insist upon the application of the purchase-money due from Mrs. Zellers to the discharge of the common mortgage.

This seems very clear in the light of the cases just cited. It is very clear also that Mr. Dill purchased, subject to the Cameron mortgage, and it is equally clear that as between all the other vendees of Shriner, Elizabeth Ulsh being herself a debtor (though only a surety) in the Cameron mortgage, cannot call upon the holder of that mortgage to so use it as not to disturb her until the last vendee's lands are exhausted. On the contrary, she being the debtor, the other vendees may call upon her to pay it, and claim that her land shall be first exhausted to satisfy the mortgage before their lands contribute, thus reversing the usual order in cases of partial sale of land bound by a common debt. The next question is can Mr. Dill invoke the rule just cited to protect himself, *i. e.*, that he is a vendee for value, and seeing a common mortgage on the whole one hundred and twelve acres might have concluded that the usual rule of taking the lands in the inverse order of sale to discharge the lien, that Mrs.

[Dill's Appeal.]

Ulsh being the first vendee would under the rule be the last to contribute to its payment. But he is charged with at least constructive notice of the existence of the Cameron mortgage, and when he saw that as the law supposes he did see it, he also saw that Mrs. Ulsh was a party to it, and one of her obligors, and he was bound to conclude that, being her own debt, her land would be first taken to discharge it for the benefit of even the subsequent vendees. This is also plain beyond dispute. No case is thus presented for the interference of the court. We therefore refuse to compel Mrs. Foster to assign the Cameron mortgage to the petitioner, although he has offered to pay her full value for the same, to the end that he may so enforce the collection of it as to relieve his own land from contributing to its payment."

MARCH 17, 1883.—The Court entered a decree discharging the rule rescinding the stay, and giving the plaintiff leave to proceed, whereupon the petitioner took this appeal, assigning for error the decree of the Court.

*Dill & Beale* for appellant.

The rule laid down in Mott *v.* Clark is that the assignee of a mortgage takes it subject to all the equity of the mortgagor, but not to the latent equity of a third person. This principle does not apply to the present case ; first, because Hannah V. Foster, the assignee of the Zellers mortgage, had notice by the record and constructive notice of every material fact necessary to enable appellant to maintain his cause against her. Second, because the equity invoked by appellant is not a latent equity, but a patent equity growing out of the transaction itself : Wolbert *v.* Lucas, 10 Bar., 73 ; Tod *v.* Gallagher, 16 S. & R., 263.

Beddow *v.* Dewitt, 7 Wright, 326 ; Wallace Estate, 2 Pittsburgh, 145 ; Wade *v.* Filan, 5 Lwz., L. Reg., 106 ; Mullison's Estate, 68 Pa., 212.

The assignee of a mortgage takes it subject to all equities between the original parties and not to any secret equities not arising out of the instrument.

A purchaser at sheriff's sale is not bound to look beyond the record, and here the record showed title in Elizabeth Ulsh, subject only to the payment of the mortgage for which the whole tract was bound : Coyne *v.* Souther, 61 Penna. State, 455.

*Alfred Hayes* for appellee.

Ordinarily, where a tract of land, subject to a single

mortgage, has been sold by the mortgagor, in distinct parcels, to several vendees, at successive periods of time, the tracts are to be made available in payment of the lien in the inverse order of their alienation : but to this there are exceptions. Mrs. Ulsh was personally liable in the Cameron mortgage.

Equity calls on her to pay her own obligation ; to make good what she promised to do, before she will be allowed to compel them to pay anything in that behalf : Carpenter *v.* Koons, 8 Harris, 222 ; Bank *v.* Burns, 6 Norris, 491.

The appellant had actual notice of this mortgage.

The appellee had neither actual or constructive notice of such facts as will enable the appellant to maintain his cause against her.

OCTOBER 1, 1883.—The opinion of the court was delivered by STERRETT, J.

The facts of this case, as disclosed by the petition and answer, are fully stated in the opinion of the Court below. In March, 1866, a mortgage of one hundred and twelve acres of land was made by Isaac Eisenhower, Mary L., his wife, and Elizabeth Ulsh, as security for the payment of their bond for $1,000 in favor of William Cameron. Judgment was afterwards obtained on the mortgage for $1,902 66 debt and interest, and on July 3, 1882, the same was assigned to Miss Foster, the appellee. In February, 1871, the three mortgagors, above named conveyed the same premises, subject to the mortgage to Charles | H. Shriner for the consideration of $6,000, out of which he agreed to pay the mortgage, but never paid it. On the day after the last-mentioned conveyance, Shriner, by deed, not recorded until February 20, 1877, conveyed thirty-two acres of the same land in fee to Mrs. Ulsh. Afterwards the residue of the tract was sold and conveyed by Shriner, in parcels as follows, viz: April, 1871, fifty-three acres and sixty-two perches to Mary M. Zeller ; April, 1874, eight and a half acres to Jacob Boyer ; August, 1875, ten acres to Henry Zeller, and November, 1875, the residue to Charles Thomas. The part conveyed to Mrs. Ulsh in February, 1871, as above stated, was subsequently sold by the sheriff, as her property, and conveyed to appellant in December, 1878. In the sale to Mrs. Zeller a mortgage for $1,600 purchase-money, recorded June 26, 1871, was given to Shriner and assigned the same day to the appellee, Miss Foster. She is therefore the holder of both mortgages, viz : the Cameron mortgage, which is the

first lien on the whole tract of one hundred and twelve acres, antedating the conveyance to Shriner, and the Zeller mortgage, which is a second lien on the portion conveyed to Mrs. Zeller. As sheriff's vendee of the portion conveyed to Mrs. Ulsh, appellant contends that he has equities which entitle him to pay the Cameron mortgage and take an assignment thereof, to the end that he may collect the same from the Mrs. Zeller lot in relief of his own lot. The refusal of the learned judge to make an order requiring Miss Foster to accept the debt, interest, and costs of the Cameron mortgage and assign the security to appellant is the subject of complaint in the several specifications of errors.

In view of the facts, as they appear of record, and for reasons given by the learned judge, we think the order prayed for was rightly refused. As the sheriff's vendee of Mrs. Ulsh's interest in the thirty-two-acre tract, appellant occupies no better position than she did before the sale. In her hands the land was bound by the mortgage given by herself and her coöbligors to secure their joint indebtedness to the holder thereof. While that remained unpaid she had no equity, as against the holder of the mortgage, that would justify the Court in making an order postponing the sale of her portion of the mortgaged premises until the residue thereof was exhausted. Being one of the mortgagors who created the incumbrance to secure their joint indebtedness, and whose duty it was, at least as between themselves and their creditor, to pay the same, she was in no position to claim the equitable interference of the Court for the protection of her portion of the mortgaged premises. Nor did appellant, by purchasing at a judicial sale or otherwise, acquire any equity on which to ground his application for the order which the Court declined to make. It would have been otherwise, if the sale to him had been clear of all incumbrances; but it was not. It was made on a judgment, and, as a matter of course, he purchased subject to the mortgage, which is the first lien. It appears, moreover, upon the face of the sheriff's return that the land was sold subject to the mortgage, of which public notice was given at the time of sale. As was said in Carpenter *v.* Koons, 8 Harris, 222, there is a wide and palpable difference between one who buys land subject to a mortgage and has a reduction in price equal to the amount of the lien, and another who pays its full value. The assignments of error are not sustained.

Decree affirmed and appeal dismissed at the costs of appellant.